UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

PETER F.A. BROWN,

   Plaintiff,

v.    406CV002

MICHAEL CHERTOFF, Secretary, Department of Homeland Security; and DEPARTMENT OF HOMELAND SECURITY,

   Defendants.

## ORDER

### I. INTRODUCTION

Plaintiff Peter Brown brought this employment discrimination case against Michael Chertoff and the Department of Homeland Security (the Government). Doc. # 1. He claims that the defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*; the Age Discrimination Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*; the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 1221, 2302, 7511-7513, 7703(b)(2); the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, 701-706, and the First and Fifth Amendments when they terminated him as a chemist with the Department of Homeland Security (DHS). Doc. # 1 at 1.

The Court previously granted the Government's motion for summary judgment on Brown's first count, which was essentially an appeal from the Merit Systems Protection Board (MSPB) decision upholding his termination. Doc. # 57 at 7-20. The Court also dismissed his First Amendment and ADEA claims. *Id.* at 3-7. The Government moves for summary judgment on, *inter alia*, Brown's Fifth Amendment claims. Doc. # 65.

### II. BACKGROUND

Brown was employed for approximately 20 years at the U.S. Customs and Border Protection Savannah Laboratory (the Lab), a unit of DHS. Doc. # 1 at 2-3. He specialized in organic chemistry. *Id.* at 3. At some point in 2000, the Lab transferred him from the "Organic Team" to the "Inorganic Team," though he continued to analyze only organic material. *Id.* at 3-4. After a series of events surrounding his transfer, Brown was terminated. *Id.* at 10.

Brown appealed his termination to the MSPB. *Id.* Brown raised claims of

> unlawful reprisal for whistleblowing in violation of the Whistleblower Protection Act[;] violation of Appellant's right to free speech and association under the First Amendment[;] violations of the Collective Bargaining Agreement between the Agency and the National Treasury Employees Union; violations of Title VII, of the Civil Rights Act of 1964, as amended, in reprisal and/or retaliation for Mr. Brown's prior [EEO] activities; and discrimination on the basis of age in violation of the [ADEA].

*Id.* The Administrative Judge (AJ) found that the DHS had established insubordination and inappropriate conduct, and rejected all of Brown's claims, including the alleged constitutional violations. Doc. # 1 at 10-11. Brown unsuccessfully petitioned the MSPB for reconsideration, so the AJ's decision became the final decision of the MSPB. *See Bante v. Merit Sys. Prot. Bd.*, 966 F.2d 647, 648 (Fed.

Cir. 1992) (AJ's decision becomes final decision of MSPB when MSPB denies review).

Brown then filed this action. Doc. # 1. He (1) sought judicial review of the MSPB's decision pursuant to the CSRA; (2) claimed he was fired in retaliation for his ADEA and Title VII activity with the EEO; and (3) claimed violations of his Fifth Amendment due process and First Amendment free speech and association rights. *Id.*

The Court affirmed the MSPB, and thus granted the Government summary judgment on count (1). Doc. # 57 at 7-20. Additionally, the Court noted that the CSRA provides the sole means for Brown to pursue his claims based on the First and Fifth Amendments, so the Court granted the Government's motion to dismiss Brown's First Amendment claim (the Government never moved to dismiss Brown's Fifth Amendment claims, but the Court noted that they were due to be dismissed). *Id.* at 3-4.

Finally, the Court held that the ADEA provides no cause of action for retaliation against federal government employees, so it granted the Government's motion to dismiss Brown's ADEA retaliation claim. *Id.* at 4-7. Brown's remaining claims, therefore, are his Fifth Amendment and Title VII retaliation claims. The Government has moved for summary judgment on both. Doc. # 65. Because the Title VII claim is still subject to discovery matters, *see* doc. # 86 at 2, this Order will reach only Brown's Fifth Amendment claims.

### III. ANALYSIS

As the Court stated in its 10/16/06 Order:

In *Bush v. Lucas* [462 U.S. 367 (1983)], the Court refused to create a *Bivens*-style remedy for a federal employee claiming a violation of the First Amendment because the "federal employment relationship ... is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." *Id.* at 368.

Courts have extended this reasoning to bar federal employees from pursuing common law, *Bivens*-style actions based on violations of other amendments, *e.g. Wells v. Federal Aviation Administration*, 755 F.2d 804, 809-10 (11th. Cir. 1985) (Fifth Amendment due process claims barred), state common law claims, *e.g. Broughton v. Courtney*, 861 F.2d 639, 644 (11th Cir. 1988), and claims based on other statutory remedies, including the APA, *e.g. Stephens v. Dept. of Health & Human Servs.*, 901 F.2d 1571, 1575-76 (11th Cir. 1990) (CSRA preempts APA claims -- constitutional and non-constitutional).

Here Brown pursued his First Amendment claim through the CSRA and now, in addition, has filed a complaint in this Court alleging First and Fifth Amendment claims for *Bivens*-style damages [-- Brown corrects the Court and notes that he does not seek *Bivens* damages, doc. # 76 at 7 --] and APA injunctive relief. But *Bush*, *Wells*, and *Stephens* foreclose these claims. That is, the CSRA preempts Brown's APA claims, as well as any other means of enforcing his constitutional claims. Such claims are square pegs, while *Bivens* and the APA are round holes. Brown, however, never invoked the CSRA -- the sole square hole -- to

pursue his Fifth Amendment claim (though he did assert the equivalent "harmful procedural error"). Still, the Government does not move to dismiss the Fifth Amendment claim.

Doc. # 57 at 3-4 (footnote omitted). Now the Government moves for summary judgment on the Fifth Amendment claims; the reasons discussed *supra* compel the Court to grant the motion.

Brown cites *Hardison v. Cohen*, 375 F.3d 1262 (11th Cir. 2004), in arguing that a claim for injunctive relief is still available to him. *Hardison*, however, provides no assistance to Brown. That case noted the possibility that federal courts can fashion equitable remedies for direct violations of the Constitution -- an analog to *Bivens* money damages -- in unconstitutional-termination lawsuits. *Id.* at 1266. The *Hardison* court noted that "the Supreme Court has not ruled definitively that Congress has the authority to preclude [direct equitable] remedies." *Id.*[1]

But the pre-*Hardison*, *Stephens* panel held that the CSRA provides the sole mechanism for remedying the federal employee's constitutional claims. Hence, employees like Brown may bring no APA claims, direct constitutional claims, or *Bivens* actions. *Stephens*, 901 F.2d at 1575-77. *Hardison* acknowledged that holding, yet concluded that *Stephens* did not foreclose a direct equitable claim. *Hardison* provided three reasons for this conclusion:

---

[1] The issue here is not whether Congress can limit a federal court's power to grant *Bivens* legal relief or analogous equitable relief; rather, it is whether a congressional enactment provides a sufficient means to pursue a constitutional violation, thus negating the extraordinary circumstances required for a federal court to cut such a remedy out of whole cloth.

First, in *Stephens* we did not mention any possible distinction between legal and equitable relief. Second, the plaintiff in *Stephens* was eligible for and took advantage of an administrative remedy. Had the *Stephens* plaintiff been left without a remedy, it is not clear that this Court would have found that his equitable claim was barred. Third, *Stephens* did not discuss *Perry v. Thomas*, which held that the federal courts "have the power to issue injunctive relief, in appropriate cases, in disputes between the United States and its employees, notwithstanding the existence of administrative remedies." 849 F.2d [484,] 484 [(11th Cir. 1988)].

*Hardison*, 375 F.3d at 1267 (cites omitted).

In fact, *Stephens*'s holding was quite clear: "We hold that under [*United States v.*] *Fausto* [484 U.S. 439 (1988)], and a number of cases of the U.S. Courts of Appeals, the CSRA is Stephens' exclusive remedy." *Stephens*, 901 F.2d at 1575. Indeed, in three different sections the *Stephens* opinion clarified that the CSRA precludes other claims: Part III of the opinion held that the CSRA barred injunctive relief via the APA or mandamus; part IV held that the CSRA provided an adequate remedial mechanism, such that injunctive relief arising directly from the Constitution was not required; and part V held that a money damages claim arising directly from the Constitution -- a *Bivens* action -- was also not available, though the CSRA provided only one of several grounds for denying relief.

*Hardison* also distinguished *Stephens* because in *Hardison* the plaintiff had no administrative remedy. But here Brown, like Stephens (and unlike plaintiff Hardison), had

3

access to and in fact utilized the CSRA.

Finally, *Hardison* criticized the *Stephens* opinion for not discussing *Perry v. Thomas*, 849 F.2d 484 (1988): "*Stephens* did not discuss *Perry v. Thomas*, which held that the federal courts 'have the power to issue injunctive relief, in appropriate cases, in disputes between the United States and its employees, notwithstanding the existence of administrative remedies.'" *Hardison*, 375 F.3d at 1267 (quoting *Perry*, 849 F.2d at 484). However, that criticism is unfounded, and a review of the entire *Perry* opinion reveals why:

PER CURIAM:

The District Court order dismissing this case seems to be based upon the conclusion that it lacked jurisdiction to intervene in this federal personnel matter by issuing an injunction -- that is, that the claim could not be entertained because of the existence of administrative remedies prescribed by law. This was the chief argument advanced to the District Court.

*At oral argument to us, appellees, officials of the Equal Employment Opportunity Commission, have indicated that they do not contest* **that the United States Courts have the power to issue injunctive relief, in appropriate cases, in disputes between the United States and its employees, notwithstanding the existence of administrative remedies.** Especially in the light of this concession, we agree that the Civil Service Reform Act of 1978 (CSRA) does not deprive the United States Courts of their traditional injunctive powers to protect constitutional rights.

We VACATE and REMAND the District Court's order on the denial of injunctive relief on the First Amendment claim, with instructions to the District Court, in its consideration of the merits, to determine and to state on remand whether injunctive relief is required, based on traditional considerations. This court expresses no opinion as to the appropriateness of injunctive relief, and we observe that, in determining whether such relief is to be granted, the District Court may properly take into account the existence of remedies under the CSRA.

The District Court's order is, in part, VACATED and REMANDED for further proceedings pursuant to the instructions set out above.

849 F.2d at 484-85 (emphasis added). *Hardison* quoted the bold portion as what *Perry* "held" (*i.e.*, that federal courts have the power to issue injunctions in federal-employment cases) but conspicuously omitted the italicized portion, which denotes the critical fact that the Government *conceded* that point.

Whatever *Perry*'s "holding,"[2] it was irrelevant in *Stephens*. *Perry* dealt with whether federal courts have "injunctive powers to protect constitutional rights," *id.* at 485; *Stephens*, in contrast, dealt with whether those powers should be exercised. *Stephens* squarely held that, even where a federal court has the power to prescribe an equitable remedy for a constitutional violation, exercising that power is

---

[2] It is tough to credit *Perry* with the broad holding attributed to it by *Hardison* given (a) the importance and complexity of the issue; and (b) *Perry*'s failure to cite a single legal authority, resting the conclusion solely on the Government's concession.

4

inappropriate where Congress in fact has provided "adequate remedial mechanisms." *Stephens*, 901 F.2d at 1576 (quoting *Schweiker v. Chilicky*, 487 U.S. 412 (1988)). According to *Stephens*, "[t]he CSRA provides adequate remedial mechanisms." *Id.*

*Stephens*'s holding, not *Hardison*'s dictum, therefore controls here. Brown challenged the constitutionality of his termination through the CSRA, and *Stephens* held that the CSRA is a constitutionally adequate remedial mechanism. *Stephens*, 901 F.2d at 1576. Brown thus cannot argue the constitutional issues anew in federal court because, again, "the CSRA is [his] exclusive remedy." *Id.* at 1575.

The Government's motion for summary judgment on Brown's Fifth Amendment claims therefore is granted, and only Brown's Title VII retaliation claim remains.

## IV. CONCLUSION

The Court ***GRANTS*** the motion (doc. # 65) of defendants Michael Chertoff and the Department of Homeland Security for summary judgment against Count III of Peter Brown's Complaint. This case is not dismissed, however, since Brown's Title VII retaliation claim remains.

This __ day of April, 2007.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA